IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN V. HANEY,

         Plaintiff,

   v.

WEST CHESTER UNIVERSITY, et al.,

         Defendants.

CIVIL ACTION
NO. 18-02456

## OPINION

**Slomsky, J.**                                                                                    **August 16, 2018**

## I.    INTRODUCTION

Plaintiff John V. Haney brings this suit pursuant to 42 U.S.C. § 1983 seeking a declaration that disciplinary proceedings pending against him are unconstitutional and an order enjoining them. He names as Defendants West Chester University (WCU), Zebulun R. Davenport, Ph.D. and Christina Brenner.[1] (Doc. No. 1.) Plaintiff turned to the Court after learning that Defendants Davenport and Brenner, acting in the scope of their employment at WCU, charged Plaintiff with violating provisions of WCU's Student Code of Conduct ("Code") allegedly for lying on his online application to WCU. (Id. at 7.) A hearing to adjudicate the charges has been scheduled. (Id.) The hearing will determine whether Plaintiff violated the

---

[1]  Plaintiff is an adult male who currently is a full-time undergraduate student in good standing at WCU. (Doc. No. 1 at 4.) Defendant WCU is an educational institution organized and existing under the laws of the Commonwealth of Pennsylvania. (Id. at 4-5.) Defendant Zebulun R. Davenport, Ph.D. is the Vice President of Student Affairs at WCU. (Id. at 5.) In that role, he is responsible for the activities, policies and procedures of the WCU Office of Student Conduct. (Id. at 5.) Defendant Christina Brenner is an Assistant Dean of Students at WCU and the Director of the Office of Student Conduct. (Id.) As Director, she is responsible for implementing, coordinating and monitoring WCU's Student Code of Conduct ("Code"). (Id.) Defendants Davenport and Brenner are sued in their official capacities only. (Id.)

provisions under which he is charged. (Id.) If such a finding is made, it may result in Plaintiff being suspended or expelled from WCU. (Id.)

Plaintiff initiated this action on June 13, 2018 by filing the Complaint. (Id.) Five days after he filed the Complaint, on June 18, 2018, Plaintiff filed a Motion for Preliminary Injunction. (Doc. No. 2.) In the Complaint and in the Motion for Preliminary Injunction, Plaintiff alleges that the pending disciplinary proceedings violate procedural due process guaranteed by the Fourteenth Amendment. (Doc. Nos. 1, 2.) He asks this Court to enjoin Defendants from proceeding with the proposed hearing to adjudicate his alleged violations of the Code. (Doc. Nos. 1, 2.)

In response to the Complaint, Defendants have filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. (Doc. No. 9.) They argue under Rule 12(b)(1) that because Plaintiff complains about a process that has not yet occurred, the matter is not ripe and therefore the Court lacks subject matter jurisdiction to consider the Complaint. (Id.) They argue under Rule 12(b)(6) that the Code comports with due process in all respects and therefore the Complaint fails to state a claim.[2] (Doc. No. 9.)

---

[2] There are three issues before the Court: (1) whether Plaintiff is entitled to a preliminary injunction, (2) whether the Complaint should be dismissed because the Court lacks subject matter jurisdiction over it and (3) whether the Complaint should be dismissed because it fails to state a claim. Although the Court will find in this Opinion that it has no subject matter jurisdiction in this case, see infra Section IV.B.1, the Court still is rendering an Opinion on the other two issues because an appellate court should know, if an appeal is taken, this Court's Opinion on the Motion for Preliminary Injunction and the Motion to Dismiss for failure to state a claim. Since the Motion to Dismiss is being granted in its entirety and the Motion for Preliminary Injunction is being denied, the hearing scheduled to adjudicate the charges against Plaintiff will ensue. Moreover, the same result follows by the Court dismissing the Complaint for lack of subject matter jurisdiction. For these reasons, the Court has issued a comprehensive Opinion on all three issues listed above.

In response to the Motion for Preliminary Injunction, Defendants have filed a Response in Opposition (Doc. No. 12), to which Plaintiff has filed a Reply (Doc. No. 15). Plaintiff also has filed a Response in Opposition to the Motion to Dismiss (Doc. No. 10), and Defendants have filed a Reply (Doc. No. 14).

Plaintiff's Motion for Preliminary Injunction (Doc. No. 2) and Defendants' Motion to Dismiss (Doc. No. 9) also have been fully briefed and all Motions are ready for disposition.[3]

## II. BACKGROUND

### A. Factual History

In January 2015, after completing his first semester as a freshman at Quinnipiac University, Plaintiff transferred to Temple University for the second semester of his freshman year. (Doc. No. 1 at 6.) On February 7, 2015, Plaintiff was arrested and charged with assaulting Michael Fischer, another Temple University Student, at Fischer's apartment. (Id.)

By letter dated February 12, 2015, Plaintiff notified Temple University that he was voluntarily withdrawing from enrollment there. (Id.) By letter dated February 17, 2015, Temple University notified Plaintiff that he had been expelled for violating the Temple Student Conduct Code. (Id.)

On February 26, 2015, Plaintiff applied to WCU by completing WCU's online application. (Id.) He applied as a transfer student from Quinnipiac University. (Id.) Section 6 of WCU's online application sought information about prior colleges attended by Plaintiff. (Id.) Section 6 asked: "Have you ever been dismissed or suspended from an institution of higher

---

[3]  In reaching a decision, the Court has considered the Complaint (Doc. No. 1), the Motion for Preliminary Injunction (Doc. No. 2), Defendants' Response in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 15), the Motion to Dismiss (Doc. No. 9), Plaintiff's Response in Opposition (Doc. No. 10), Defendants' Reply (Doc. No. 14) and the arguments of counsel during a telephone conference on the Motion for Preliminary Injunction, which was held on July 2, 2018 (Doc. No. 8).

education for disciplinary reasons?" (<u>Id.</u>) Plaintiff answered "No" to this question. (<u>Id.</u>) By letter dated April 24, 2015, Plaintiff was notified that he had been admitted to WCU as a full-time undergraduate student for the 2015 fall term. (<u>Id.</u>) He has been a full-time undergraduate student at WCU to the present date. (<u>Id.</u>)

On April 12, 2016, a jury found Plaintiff guilty of simple assault regarding his February 7, 2015 fight with Michael Fischer. (<u>Id.</u>) Currently pending in the Court of Common Pleas of Philadelphia County is a civil lawsuit filed by Michael Fischer against Plaintiff and other defendants that arises out of the February 7, 2015 incident. (<u>Id.</u> at 7.)

In early March 2018, Defendant Davenport received a letter from Fisher's counsel in the civil case apprising WCU of Plaintiff's criminal conviction and the related civil suit. (<u>Id.</u>) Davenport subsequently forwarded the letter to Defendant Brenner with instructions to open an investigation into the events surrounding Plaintiff's application and admission to WCU. (<u>Id.</u>) The investigation found probable cause that Plaintiff lied on his online application for admission to WCU. (<u>See</u> <u>id.</u>)

On June 28, 2018, Brenner notified Plaintiff that he has been charged with violating § I(C)(16) (Dishonesty) and § I(C)(20)(d) (Failure to Comply) of the Code and that a Judicial Board Hearing on those pending charges had been scheduled for July 11, 2018. (<u>Id.</u>) After a telephone conference with the parties and the Court, WCU postponed the hearing to the week of August 20, 2018. (<u>Id.</u>; Doc. No. 11.) Brenner also has notified Plaintiff that WCU intends to apply the procedures set forth in the 2015 version of the Code (the "2015 Code") in adjudicating the charges against him.[4] A finding that Plaintiff violated either § I(C)(16) or § I(C)(20)(d) of

---

[4] The Complaint states that Brenner informed Plaintiff that WCU intends to apply the 2015 Code in adjudicating the charges against him. (Doc. No. 1.) Defendants, however, apparently had a change of heart. They argue in their Motion to Dismiss that they intend to apply the

4

the 2015 Code might result in Plaintiff being suspended or expelled from WCU. (Doc. No. 1 at 7.)

**B. Procedural Provisions of the 2015 Code**

According to the 2015 Code, alleged violations of the Code that may result in a student being suspended or expelled are to be adjudicated by a University Judicial Board composed of two students and one faculty or staff member. (Doc. No. 10, Ex. A.) The procedure set forth in the 2015 Code to adjudicate an alleged violation of the Code is as follows:

a) The hearing officer/board shall open the proceedings by reading the statement of charges.

b) Before presenting any testimony, each witness must submit to an oath where he or she swears and affirms the truth of statements to be made.

c) The charging party shall then present its case against the accused party. This shall be done by the submission of written, physical, and testimonial evidence.

d) At the conclusion of the charging party/victim/complainant's presentation, the accused party shall present a response to the charges. This shall be done by the submission of written, physical, and/or testimonial evidence.

e) At the close of the hearing, the hearing officer/board may allow closing statements by the parties, which may include rebuttal comments.

(Id. at 8.) The Code requires that "[t]he hearing officer/board shall be responsible for ensuring that each student is given due process during all conferences and hearings, whether or not the student is present." (Id.) The Code further ensures that "[p]ending action on the charges, the

---

2014 version of the Code and therefore, they cite that version in their briefs. (Doc. No. 9 at 6 n.4.) Here, the Court must accept the allegations in the Complaint as true and can consider documents "integral to or explicitly relied upon in the complaint" or documents Defendants attach to their Motion to Dismiss if the claims are based on them. Gov't Emps. Ins. v. Nealey, 262 F. Supp. 3d 153, 167 n.12 (E.D. Pa. 2017). Only the 2015 Code is integral to or explicitly relied on in the Complaint. The 2014 Code is not integral to or explicitly relied on in the Complaint and the claims are not based on it. Thus, the Court will consider only the 2015 Code. Plaintiff attached a copy of the 2015 Code to its Response in Opposition to Defendants' Motion to Dismiss as Exhibit A.

student's status shall not be altered nor shall the student's right to be present on campus or to attend classes be suspended, except for reasons relating to his or her physical or emotional safety and well-being." (Id. at 9.)

## III. STANDARD OF REVIEW

### A. Standard Governing a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). Therefore, preliminary injunctive relief "should be granted only in limited circumstances." Id. (citation omitted). To obtain a preliminary injunction, the moving party must show as a prerequisite

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017) (alteration in original) (quoting Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919-20 (3d Cir. 1974)). A party moving for a preliminary injunction must initially "meet the threshold for the first two . . . factors," and only if these "gateway factors" are met should the district court then consider the remaining two factors. Id. at 178. The court must then determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id. at 179.

### B. Standard Governing Rule 12(b)(1) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), motions challenging this Court's jurisdiction fall into two categories: a facial or factual attack on subject matter jurisdiction. A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the

complaint, and it requires the court to 'consider the allegations of the complaint as true.'" Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"  Id. at 346 (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

"Courts have considered a challenge to the ripeness of a claim to be a facial challenge to subject matter jurisdiction." Evanston Ins. v. Layne Thomas Builders, Inc., 635 F. Supp. 2d 348, 352 (D. Del. 2009) (citing Thompson v. Borough of Munhall, 44 F. App'x 582, 583 (3d Cir. 2002)).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### C.  Standard Governing Rule 12(b)(6) Motion to Dismiss

The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544.  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

# IV.    ANALYSIS

## A.  Plaintiff's Motion for Preliminary Injunction Will Be Denied

Plaintiff seeks a preliminary injunction to enjoin Defendants from proceeding with the proposed hearing to adjudicate his alleged violations of the Code.  (Doc. No. 2.)  He argues that the pending disciplinary proceedings violate procedural due process guaranteed by the Fourteenth Amendment.  (Id.)  The procedural defects alleged by Plaintiff are that the procedure set forth in the 2015 Code neither provides him with an opportunity to be heard on whether he is subject to the 2015 Code nor grants the judicial board the power or authority to hold that the 2015 Code does not apply to Plaintiff.[5]  (Id.)

Plaintiff also complains that the 2015 Code does not provide an accused student with the right to question or cross-examine adverse witnesses; it does not require either the director or the adverse party to identify prior to the hearing any documents that may be used at the hearing or require the director or adverse party to provide the accused with a copy or opportunity to review any documents that may be used at the judicial board hearing; and while it permits a student to have an attorney advisor, it does not permit an attorney to actively participate at the hearing. (Id.)  Plaintiff also complains that the 2015 Code requires the accused student, but not the complainant, to submit to the director the names and contact information of any witnesses he intends to call within two days of receiving notice of the hearing date.  (Id. at 9.)

For the reasons that follow, Plaintiff's request for extraordinary relief does not meet the standard required for a preliminary injunction.

---

[5]  Plaintiff's argument is that the 2015 Code applies to "students" only, and at the time he submitted his online application to WCU, he did not meet the Code's definition of "student."

**1. Likelihood of Success on the Merits**

The first prerequisite to obtaining a preliminary injunction is that Plaintiff must demonstrate he can win on the merits. This "requires a showing significantly better than negligible but not necessarily more likely than not." Reilly, 858 F.3d at 180. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." Id. at 179 (citation omitted).

Plaintiff is not likely to succeed on the merits. Preliminarily, his claims are not ripe for adjudication, as will be discussed in the next section. Assuming they are ripe, his claims still are not likely to succeed on the merits because the 2015 Code complies with due process guaranteed by the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In the landmark decision Goss v. Lopez, the Supreme Court held for the first time that a student's entitlement to a public education is a property interest protected by the Fourteenth Amendment's due process clause, "which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." 419 U.S. 565, 574 (1975).

After Goss, at a minimum, students facing a suspension of ten days or less are entitled to notice and a hearing. Id. at 581. Specifically in Goss, the Court found that the plaintiff was entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. The Court stated that this process would "provide a meaningful hedge against erroneous action." Id. at 583.

The Court in Goss stopped short of requiring that the student be given "the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." Id. at 583. It cautioned that "further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process." Id. As long as the student "at least ha[s] the opportunity to characterize his conduct and put it in what he deems the proper context," due process has been satisfied. Id. at 584. The Court warned, however, that longer suspensions or expulsion "may require more formal procedures" to satisfy due process, but it did not elaborate on what those procedures would entail. Id. Thus, Goss set the stage for courts to determine the parameters of constitutional due process for suspensions longer than ten days or expulsions.

After Goss, precedents hold that long-term suspension or expulsion procedures must provide an accused student with the minimum requirements identified in Goss. The Sixth Circuit, acknowledging that the Goss holding is limited to short-term suspensions, noted that Goss "nevertheless establish[ed] the minimum requirements for long-term expulsions as well." Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 927 (6th Cir. 1988). In that regard, students facing long-term suspension or expulsion do "not have the right to a full-blown administrative appellate process." Id.

Somewhat recently, the Seventh Circuit found that "expulsion does not require a more elaborate hearing in order to comport with due process so long as the student receives the 'fundamentally fair procedures' set out in Goss." Coronado v. Valleyview Pub. Sch. Dist. 365-U, 537 F.3d 791, 795-96 (7th Cir. 2008) (citations omitted); see also Remer v. Burlington Area Sch. Dist., 286 F.3d 1007, 1010-11 (7th Cir. 2002) (finding that notice of the charges, notice of the

time of the disciplinary hearing, and a meaningful opportunity to be heard provided due process to a student recommended for expulsion); Carey v. Maine Sch. Admin. Dist. No. 17, 754 S. Supp. 906, 919 (D. Me. 1990) (requiring expelled student to receive an "opportunity to be heard in his own defense").

While courts note that Goss established the minimum requirements, the Third Circuit has held that a greater deprivation did not necessarily warrant additional procedures. In Palmer v. Merluzzi, 868 F.2d 90 (3d Cir. 1989), the Third Circuit considered a due process challenge to the suspension of a high-school student facing a greater punishment than that imposed in Goss. The student had been placed on a ten-day academic suspension and a sixty-day athletic suspension for consuming beer and marijuana on school grounds. Id. at 92. He had an informal meeting with the school disciplinarian and the football coach when evidence of his alcohol and drug use was found. Id. The school sent written notice to the student's parents before suspending him. Id. Neither the student nor his parents protested the academic suspension but the student's parents protested the athletic suspension. Id. The student's father then had a thirty-minute closed-door session with the Board of Education to argue his son's case before the suspension was imposed. Id. The Third Circuit found that due process was implicated but that the student received all the process he was due. Id. Importantly, the Court found that the student received the process required by Goss and additional procedures were not warranted despite the slightly greater deprivation. Id.

This Court gathers from the above that long-term suspension or expulsion procedures must provide an accused student with notice and an opportunity to be heard in his defense and a greater deprivation might not warrant a higher level of due process than in Goss. Still, "[t]he standards of procedural due process are not wooden absolutes." Keough v. Tate Cty. Bd. of

Educ., 748 F.2d 1077, 1081 (5th Cir. 1984). Accordingly, the "sufficiency of procedures employed in any particular situation must be judged in light of the parties, the subject matter and the circumstances involved." Id.

To determine the contours of what process is due for student disciplinary procedures, courts in the Third Circuit apply the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). E.g., Palmer, 868 F.2d at 95. Mathews instructs that courts must balance the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

Here, Plaintiff appears to presume he is entitled to additional procedures beyond what Goss requires because there is a possibility, based on his charges, that he might be suspended for longer than ten days or expelled. In view of the Mathews factors, though, he is not entitled to the additional procedures he requests.

Regarding the first factor, as a state college student, Plaintiff has a valid property interest in his continued education at WCU. See Goss, 419 U.S. at 574. This property interest is the "private interest" with which Defendants allegedly are tampering. In Goss, the Supreme Court characterized this interest as "important." Id. at 576. The Court noted the value in avoiding "unfair or mistaken exclusion from the educational process with all its unfortunate consequences." Id. at 579. Those consequences include not only the loss of the benefit of the educational process but also potential damage to "the students' standing with their fellow students and their teachers" and potential "interfer[ence] with later opportunities for higher

education and employment." Id. at 575.  Plaintiff faces particularly serious charges, the potential consequences of which include the possibility he will be expelled from WCU.  He identifies loss of tuition and a delay in obtaining a degree as additional consequences that might result from an erroneous decision in the upcoming hearing.

The second Mathews factor requires the Court to consider the "fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." Mathews, 424 U.S. at 343.  The "value" of additional procedural safeguards is judged by the extent to which they reduce the risk of "erroneous deprivation" through the procedures used.  See id. at 344-45.

Plaintiff is being given the process required by Goss.  He was given notice of the charges against him on June 28, 2018.  (Doc. No. 1 at 7.)  On that date, Defendant Brenner notified him that he has been charged with violating § I(C)(16) (Dishonesty) and § I(C)(20)(d) (Failure to Comply) of the Code and that a hearing had been scheduled for July 11, 2018—two weeks out. (Id.)  The hearing has been rescheduled for the week of August 20, 2018.  (Id.; Doc. No. 11.)  He will have an opportunity to present his side of the story at the upcoming hearing.  Importantly, he was given notice of the hearing and its procedures well in advance of the initially scheduled date, which provided him adequate time to prepare.  See Brian A. v. Stroudsburg Area Sch. Dist., 141 F. Supp. 2d 502, 510 (M.D. Pa. 2001) (finding five days' notice sufficient).

Moreover, Plaintiff has been given a higher level of due process than required in Goss.  In addition to the above, he also has been given notice of his rights at the hearing, including the right to be assisted by counsel, to question witnesses, to examine documents, to present evidence and to appeal.  (Doc. No. 12-1, Ex. 1 ¶ 12.)

Plaintiff argues that the Code should afford him a fair opportunity to make a jurisdictional challenge as to whether the Code applied to him on February 26, 2015, the date of the alleged violations. (Doc. No. 2 at 16.) He specifically requests an opportunity to resolve this issue "before any hearing on an alleged violation of the SCC takes place." (Id. at 13.) Evidently, he is doing precisely that in this action. And most importantly, the Code gives Plaintiff an opportunity to be heard at the hearing. (Doc. No. 10, Ex. A at 8.) Pursuant to the Code, he will have an opportunity to respond to the charges against him. (Id.) It is unclear why Plaintiff believes that the opportunity for him to respond to charges against him at the hearing would necessarily exclude any chance to make his jurisdictional argument.

To the extent Plaintiff believes the Code should include an express provision granting an accused the opportunity to make this jurisdictional challenge in advance of any hearing, the Court cannot ascertain any reason to hold that due process requires that such a challenge be written in the Code. Since the Code applies only to "students," should an accused prevail on this argument that the Code does not apply to him, he would establish that he is not a student. If not a student, the accused would be entitled to no due process. Indeed, no court has held that a non-student has a constitutionally protected interest in a college education. Therefore, the lack of such an express provision does not risk an erroneous deprivation of a constitutionally protected interest.[6]

---

[6]   Plaintiff references in the Complaint the current 2017 version of the Code in regard to its definition of "student." (Doc. No. 1 ¶¶ 36-37.) He also references the 2017 Code for additional definitions but they are not material to the outcome of this case. The 2015 Code does not define the word "student." The 2017 Code defines "student" as follows:

> The term "student" refers to all persons taking courses, registered or scheduled for classes for the current term, previous term, or a future term, either full, part-time, or less than part time. This includes . . . persons who have been notified of being accepted for admission, and persons who are living in the residence halls but are not enrolled at the University are also considered students.

Plaintiff also argues that the Code should grant the Judicial Board the power or authority to hold that the Code does not apply to Plaintiff. (Doc. No. 2 at 8.) This does not appear to reflect a lack of fairness or reliability in the school's disciplinary procedure. Again, Plaintiff has a protected interest because he is a student. If the Code does not apply to Plaintiff, then he is not a student and therefore lacks a protected interest. Accordingly, there is no unfairness in the lack of express authority for the Board to hold that the Code does not apply to an accused applicant.

This situation is distinguishable from one in which a school is attempting to punish someone it has no authority to punish. Plaintiff and other applicants are put on notice by a catch-all provision in WCU's online application that the Code may apply to their conduct while they are applicants. Section I(C)(20)(d), a provision Plaintiff is charged with violating, is a catch-all provision prohibiting the "failure to comply with all regulations regarding conduct on or off campus not cited in the Student Code of Conduct when such regulations have been reasonably publicized." (Doc. No. 10, Ex. A at 8). WCU "reasonably publicized" on its online application that "any deliberate falsification or omission of application data will result in denial of admission or dismissal." (Id.) Thus, the Code included a provision that put applicants on notice that the Code may apply to their conduct and Plaintiff can be summarily dismissed under that provision.

Plaintiff was charged with a violation of § I(C)(20)(d) because his conduct allegedly "fail[ed] to comply" with that regulation. This provision was sufficient to provide Plaintiff with an adequate warning that his behavior could result in disciplinary sanctions. School Codes of Conduct after all do not need to be as detailed as a criminal statute. See Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986) ("Given the school's need to be able to impose

---

Plaintiff argues that he does not fall under this definition. Whether or not he does fall under the definition, he is not being deprived of any due process by virtue of this technicality. Rather, he is being given due process as a result of Defendants' choice to apply the Code to him.

disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."); New Jersey v. T.L.O., 469 U.S. 325, 339-40 (1985) ("We have recognized that maintaining security and order in schools requires a certain degree of flexibility in school disciplinary procedures.").

Plaintiff's remaining arguments for additional safeguards lack merit because none of his proposed safeguards reduces the risk of an erroneous deprivation through WCU's procedures. First, he complains that the 2015 Code does not provide an accused student with the right to question or cross-examine adverse witnesses. As noted above, Goss stopped short of construing the Due Process Clause to afford students this opportunity. 419 U.S. at 583. After Goss, "the clear weight of authority holds that a student facing an expulsion hearing does not have the right to cross-examine witnesses or even learn their identities." B.S. v. Bd. of Sch. Tr., Fort Wayne Cmty. Sch., 255 F. Supp. 2d 891, 899 (N.D. Ind. 2003) (citing Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 925 (6th Cir. 1988)); see also J.S. v. Isle of Wight Cty. Sch. Bd., F Supp. 2d 675, 683 (E.D. Va. 2005) (finding that the "general consensus" is that "there is no due process right to cross-examine or to examine the actual statements made by witnesses").[7] Factual nuances may make the need to cross-examine witnesses more compelling but such are lacking here, where the charges against Plaintiff are based on what he wrote on his application. See

---

[7] See also Brewer v. Austin Indep. Sch. Dist., 779 F.2d 260, 263 (5th Cir. 1985); E.K. v. Stamford Bd. of Educ., 557 F. Supp. 2d 272, 276-77 (D. Conn. 2008); Tun v. Fort Wayne Cmty. Sch., 326 F. Supp. 2d 932, 944 (N.D. Ind. 2004), rev'd sub. nom. on other grounds by Tun v. Whitticker, 389 F.3d 899, 904 (7th Cir. 2005); Caston v. Benton Pub. Sch., No. 4:00cv00215WKU, 2002 WL 562638 (E.D. Ark. Apr. 11, 2002); Witvoet v. Herscher Cmty. Unit Sch. Dist. No. 2, 97-cv-2243, 1998 WL 1562916 (C.D. Ill. May 27, 1998); Smartt v. Clifton, No. D-3-96-389, 1997 WL 1774874, at *16 (S.D. Ohio Feb. 10, 1997); L.Q.A. v. Eberhart, 920 F. Supp. 1208, 1219 (M.D. Ala. 1996), aff'd, 111 F.3d 897 (11th Cir. 1997); Coplin v. Conejo Valley Unified Sch. Dist., 903 F. Supp. 1377, 1387 (C.D. Cal. 1995); Craig v. Selma City Sch. Bd., 801 F. Supp. 585, 593 (S.D. Ala. 1992).

Bogle-Assegai v. Bloomfield Bd. of Educ., 467 F. Supp. 2d 236, 243 (D. Conn. 2006) (holding no due process violation for reliance on student statements to support expulsion without cross-examination, especially where other evidence also supported the decision).

Next, Plaintiff complains that the Code does not require either the director or the adverse party prior to the hearing to identify any documents that may be used at the hearing or to require the director or adverse party to provide the accused with a copy or opportunity to review any documents that may be used at the hearing. (Doc. No. 2 at 8.) This complaint is easily discarded because "there is no discovery requirement in an academic proceeding." Furey v. Temple Univ., 884 F. Supp. 2d 223, 226 (E.D. Pa. 2012).

Plaintiff next complains that while the Code permits a student to have an attorney advisor, it does not permit an attorney to actively participate at the hearing. (Doc. No. 2 at 8.) Due process does not require such participation. Simms v. Pa. State Univ.-Altoona, No. 3:17-cv-210, 2018 WL 1413098, at *5 (W.D. Pa. Mar. 20, 2018) (noting that while the "Third Circuit has not directly faced the question of whether procedural due process gives an accused student the right to have her counsel actively participate in her student disciplinary hearing . . . the majority of district courts in the Third Circuit that have confronted this question have held that no such right exists" (citing Osei v. Temple Univ. of Commw. Sys. of Higher Educ., 10-2042, 2011 WL 4549609, at *10 (E.D. Pa. Sept. 30, 2011); Furey, 884 F. Supp. 2d at 253; Johnson v. Temple Univ. of Commw. Sys. of Higher Educ., No. 12-515, 2013 WL 5298484, at *10 (E.D. Pa. Sept. 19, 2013))).

Finally, Plaintiff complains that the 2015 Code requires the accused student, but not the complainant, to submit the names and contact information of any witnesses he intends to call to the director within two days of receiving notice of the hearing date. (Doc. No. 2 at 8.) Plaintiff

has not cited any case law to support why this requirement is inappropriate, and this Court has not located any. That said, as noted earlier, Plaintiff received notice of the hearing and its procedures well in advance of the initially scheduled date, which provided him with adequate time to prepare. See Brian A. v. Stroudsburg Area Sch. Dist., 141 F. Supp. 2d 502, 510 (M.D. Pa. 2001) (finding five days' notice in advance of hearing sufficient); Craig v. Selma City Sch. Bd., 801 F. Supp. 585, 592 (S.D. Ala. 1992) (finding five days' notice sufficient). Because Plaintiff was given adequate time to prepare for the hearing, the two day time period here in which to submit names of witnesses seems reasonable. Plaintiff had ample notice of the two day time period and ample time to compile the names of his witnesses and their contact information. Moreover, even the opportunity to call witnesses as set forth in the 2015 Code goes beyond what Goss requires. See Goss, 419 U.S. at 583.

Upon review of the above discussion of the second Mathews factor, it is evident that the Code does not risk an erroneous deprivation of Plaintiff's interest, and there is little to no probable value in Plaintiff's proposed additional or substitute procedural safeguards.

The third and final Mathews factor asks this Court to consider the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. On this factor, the Third Circuit has stated as follows:

> From the school's and the public's point of view, Goss recognized the need for maintaining order and discipline in our schools without prohibitive costs and in a manner that will contribute to, rather than disrupt the educational process. As we have noted, the Court concluded that an informal hearing process would reconcile the private and governmental interests and that requiring representation by counsel, cross-examination, and other, more formal procedural safeguards would not sufficiently increase the reliability and fairness of the process to warrant the additional expense and disruption of the educational process.

<u>Palmer v. Merluzzi</u>, 868 F.2d 90, 95 (3d Cir. 1989). Given the Third Circuit's summary of a principal holding of <u>Goss</u>, and this Court's view that there is little to no value in Plaintiff's proposed additional safeguards, it follows that the <u>Mathews</u> factors weigh against a finding that Plaintiff's contentions have merit. Simply put, Plaintiff is not being deprived of due process. For these reasons, Plaintiff is not likely to succeed on the merits of his claims. Therefore, the first prong of <u>Reilly</u> weighs against finding that the issuance of a preliminary injunction is appropriate.

### 2. Irreparable Injury

The "irreparable injury" prong of <u>Reilly</u> requires courts to determine whether it is "more likely than not [Plaintiff will] suffer irreparable harm in the absence of preliminary relief." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017). Here, if the requested injunction is not issued, there is a possibility Plaintiff will be expelled from WCU. As Plaintiff notes, if he is expelled from WCU, he will be denied the benefits of an education at his chosen school and his academic and professional reputation will be damaged. Expulsion also is likely to affect Plaintiff's ability to enroll at other institutions of higher education and to pursue a career. Neither money damages nor any other legal remedy can compensate for these injuries. Therefore, the "irreparable injury" prong likely is satisfied.

As noted initially, under <u>Reilly</u>, a party moving for a preliminary injunction must initially "meet the threshold for the first two . . . factors," and only if these "gateway factors" are met should the district court then consider the remaining two factors. <u>Id.</u> at 178. Plaintiff has failed to meet the threshold first two factors because he has failed on the first factor to establish that he is likely to prevail on the merits of his claim. Thus, the Court need not consider the next two factors.

For all these reasons, Plaintiff's Motion for Preliminary Injunction will be denied.

**B. Defendants' Motion to Dismiss Will Be Granted**

### 1. The Court Does Not Have Subject Matter Jurisdiction Under Rule 12(b)(1) Because the Matter Is Not Ripe for Adjudication

Defendants argue that the Complaint is not ripe for adjudication and thus should be dismissed for lack of subject matter jurisdiction because it consists wholly of speculation as to what might occur at a disciplinary proceeding that has yet to transpire.

The ripeness doctrine "serves to 'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir.2004) (quoting Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir.2003)). To determine whether a case is ripe, courts "generally examine: '(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration.'" Id. (quoting Peachlum, 333 F.3d at 434).

In the context of a declaratory judgment action, however, courts in this Circuit apply a "somewhat 'refined' test" because "declaratory judgments are typically sought before a completed injury has occurred." Id. (quoting Pic–A–State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 (3d Cir.1996)); see also Surrick v. Killion, 449 F.3d 520, 527 (3d Cir. 2006). The Third Circuit has explained that, pursuant to this "refined" test, a court looks to: "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." Khodara, 376 F.3d at 196 (citation omitted). In applying this test here, the Court must ensure that Plaintiff meets all three of its prongs in order to demonstrate that the claim is ripe. Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 191 (3d Cir. 2009).

To determine whether the parties' interests are sufficiently adverse, a court must determine whether "harm will result if the declaratory judgment is not entered." Travelers Ins. v. Obusek, 72 F.3d 1148, 1154 (3d Cir.1995). Although the action cannot be based on uncertain and contingent events, see Surrick, 449 F.3d at 527; Step–Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647-48 (3d Cir.1990), the party seeking declaratory relief "need not wait until the harm has actually occurred to bring the action" and can "seek a declaratory judgment where the harm is threatened in the future" so long as it can demonstrate that the "probability of that future event occurring is real and substantial, [and] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," Travelers Ins., 72 F.3d at 1154 (citations omitted). "Accordingly, a party need not decide between attempting to meet the nearly insurmountable burden of establishing that the relevant injury is a mathematical certainty to occur, nor must a party await actual injury before filing suit." Id. The threat of injury, however, "must remain real and immediate throughout the course of the litigation." Id. (citations omitted); Presbytery of N.J. v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994) (citation omitted).

Plaintiff fails under this prong. He brings this suit pursuant to 42 U.S.C. § 1983 seeking a declaration that disciplinary proceedings pending against him are unconstitutional and an order enjoining them. (Doc. No. 1.) Importantly, a "constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126 (1990). As noted above, the Supreme Court in Goss established the minimum requirements for due process that must be afforded an accused student, even for long-term suspensions or expulsions. E.g., Batavia Local Sch. Dist., 842 F.2d 920. Plaintiff does not assert that the Code fails to afford the minimum due process that Goss requires, and it clearly does so. He argues for additional safeguards beyond

what <u>Goss</u> required, which would only potentially be appropriate if his punishment is greater than a short-term suspension that would fall within <u>Goss</u>'s purview. Thus, Plaintiff's claim is contingent on him succeeding in establishing that additional safeguards beyond what <u>Goss</u> required are warranted, which he cannot do unless he is suspended for a period longer than ten days or expelled. Therefore, because the action is based on a contingent event occuring, Plaintiff fails under this prong.

The conclusiveness prong of the ripeness inquiry addresses "whether the parties' rights will be definitively decided by a declaratory judgment." <u>Step–Saver</u>, 912 F.2d at 649 n.9. "An integral part of the conclusiveness inquiry is the necessity that the court be presented with a set of facts from which it can make findings [because] [w]ithout the necessary facts, the court is left to render an advisory opinion." <u>Travelers Ins.</u>, 72 F.3d at 1155. Thus, if the question presented by the action is "primarily a legal one involving interpretation of the applicable legislation," a court is more likely to find that a decree it issues will be sufficiently conclusive. <u>Id.</u>; <u>see also</u> <u>Khodara</u>, 376 F.3d at 198. In this analysis, a court also focuses on whether "if [it] issued the requested declaration, the legal status of the parties would not change [and] would [not] be clarified." <u>Step–Saver</u>, 912 F.2d at 648.

This prong is satisfied. A declaratory judgment that the proposed hearing would violate Plaintiff's right to due process will conclusively resolve the dispute before the Court. And no further factual development is needed to address the merits of this claim.

Finally, the Court considers the extent to which a declaratory judgment would be useful to the parties in this case. <u>Id.</u> at 649. Only where a court is convinced that "a useful purpose will be served," should a case "be considered justiciable." <u>Id.</u> (citation omitted). Unlike the conclusivity inquiry, which addresses whether the parties' rights will be definitively decided by a

declaratory judgment, the utility inquiry addresses "whether the parties' plans of action[] are likely to be affected by a declaratory judgment." Id. at 649 n.9. If the parties "will take the same steps" whether or not the court acts, the claim will fail on this third prong. Id. at 650.

This prong too is satisfied. A declaratory judgment that the proposed hearing would violate Plaintiff's right to due process would affect the parties' plans of action because they would not proceed to the hearing scheduled for August 20, 2018.

But because Plaintiff does not meet all three of prongs of the Third Circuit's test, he fails to demonstrate that the claim is ripe. See Pittsburgh Mack Sales & Serv., Inc., 580 F.3d at 191.

Notably, in every school disciplinary case Plaintiff cites in his Motion for Preliminary Injunction, the plaintiff brought constitutional claims only after a disciplinary sanction was imposed. See Goss v. Lopez, 419 U.S. 565, 567 (1975); Furey v. Temple Univ., 884 F. Supp. 2d 223, 226 (E.D. Pa. 2012) ("The plaintiff filed a complaint . . . following his expulsion from Temple University . . . ."); Ross v. Pa. State Univ., 445 F. Supp. 147, 148 (M.D. Pa. 1978) (plaintiff filed a complaint alleging due process violations because state university "dismissed him as a graduate student"); Simms v. Pa. State Univ.-Altoona, No. 3:17-cv-210, 2018 WL 1413098, at *2 (W.D. Pa. Mar. 20, 2018) (describing the challenged process at Simms's disciplinary hearing); Osei v. Temple Univ. of Commw. Sys. of Higher Educ., 10-2042, 2011 WL 4549609, at *1 (E.D. Pa. Sept. 30, 2011) ("The within action stems from Plaintiff Michael Osei's disciplinary suspension from a graduate studies program . . . ."); Coulter v. East Stroudsburg Univ., No. 3:10-cv-0877, 2010 WL 1816632, at *1 (M.D. Pa. May 5, 2010) (after a hearing, the plaintiff was suspended, before filing suit); Segal v. Temple Univ. Sch. of Law, No. 99-cv-3220, 1999 WL 1210838, at *1 ("Temple expelled Segal on May 19, 1999 . . . . Segal appealed and the

Committee's findings were upheld."). Thus, Plaintiff's claims as asserted here are premature and not ripe for adjudication.

### 2. The 2015 Code Complies with Due Process

Even though the Court has found that this case is not ripe for review, it will consider the argument in Defendants' Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for the reasons explained supra in note 2. Upon review of the Complaint, it fails to state a claim upon which relief may be granted. Viewing the facts in the light most favorable to Plaintiff, he has not shown that he is entitled to relief. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). As noted at length above, the 2015 Code complies with due process in all respects. Because Plaintiff has not shown he is entitled to relief, his Complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## V. CONCLUSION

For these reasons, Plaintiff's Motion for Preliminary Injunction (Doc. No. 2) will be denied, Defendants' Motion to Dismiss (Doc. No. 6) will be granted and the Complaint (Doc. No. 1) will be dismissed. An appropriate Order follows.[8]

---

[8] Plaintiff has also filed an emergency Motion to Expedite Discovery. (Doc. No. 6.) Because his claims challenge the 2015 Code on its face for not containing procedures that he contends are required by due process, there is no need for expedited discovery on the request for a preliminary injunction. For this reason, and in view of the decision of the Court on Plaintiff's motions, the emergency Motion to Expedite Discovery will be denied as moot.